UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DOCUMENT DYNAMICS, LLC,

                          Plaintiff,

      v.

XEROX CORPORATION,

                          Defendant.
_____

**DECISION & ORDER**

20-CV-6519W

## PRELIMINARY STATEMENT

Document Dynamics commenced this action on March 8, 2018, alleging that Xerox Corporation ("Xerox") infringed its patent for a network printing tracking system, United States Patent No. 7,872,772 ("the '772 patent"), by making, using, selling, importing and/or providing and causing to be used certain Xerox managed print services. (Docket # 1). Currently pending before this Court is a motion by Xerox to stay the litigation. (Docket # 126). Also pending is a motion by Document Dynamics to compel Xerox to produce additional documents.[1] (Docket # 102).

For the reasons discussed below, Xerox's motion for a stay is denied as to fact discovery but granted with respect to all other aspects of the litigation. Additionally, Document Dynamics's motion to compel is denied without prejudice to renewal.

---

[1] By Order dated December 2, 2020, this Court granted this motion in part, denied it in part, and reserved in part. (Docket # 112). This Decision and Order addresses the reserved portion of the motion.

I.      **Motion to Stay**

   A.      **Factual Background**

This patent case has been pending for more than three years. On March 8, 2018, Document Dynamics filed suit in the District of Connecticut alleging infringement by Xerox of the '772 patent. (Docket # 1). After obtaining several extensions of the time to answer or otherwise respond to the complaint (Docket ## 10, 16, 18), on June 19, 2018, Xerox moved to dismiss the complaint (Docket # 20). While that motion was pending, the parties exchanged preliminary infringement and invalidity contentions in September and December 2018, respectively. (Docket # 128-1 at ¶¶ 5-6). Xerox's motion to dismiss was denied on March 7, 2019. (Docket # 37). Approximately one week later, on March 15, 2019, Xerox filed a motion for summary judgment and filed its answer on March 21, 2019. (Docket ## 38, 40).

Discovery was not stayed while Xerox's two dispositive motions were under consideration by the court. According to Xerox, the parties engaged in little discovery during the pendency of the dispositive motions in order to avoid litigation expenses, and discovery began in earnest in early 2020. (Docket # 126-1 at 12-13). The docket nonetheless reflects that Document Dynamics filed a motion to compel on February 12, 2019, which was denied in September 2019 in order to ensure that the parties meaningfully conferred regarding the issues raised, as required by Rule 37(a)(1) of the Federal Rules of Civil Procedure. (Docket ## 33, 53). On October 3, 2019, Xerox's motion for summary judgment was summarily denied without prejudice to renewal at the conclusion of discovery. (Docket # 55). Shortly thereafter, Xerox's counsel withdrew from the case, and Xerox's current attorneys entered notices of appearance. (Docket ## 57-69; 129-1 at ¶ 4).

On February 4, 2020, Xerox moved to transfer the case to the Western District of New York. (Docket # 72). While that motion was pending, the parties exchanged approximately 10,000 documents, and document discovery concluded in March 2020. (Docket ## 56; 74; 76; 126-1 at 12-13; 128-1 at ¶ 8). Also in February 2020, Xerox's new counsel commissioned additional third party prior art searches, and on March 2, 2020, Xerox disclosed to Document Dynamics new prior art references identified during those searches. (Docket # 129-1 at ¶ 4). Xerox's motion to transfer was granted, and the case was transferred to this district in July 2020. (Docket ## 81, 83).

Shortly after the transfer, this Court entered an amended scheduling order to establish deadlines for the remainder of the litigation. (Docket # 86). In accordance with the schedule set by the Court, on October 9, 2020, the parties filed their Joint Claim Construction and Prehearing Statement. (Docket ## 86, 98-100). The following week, Document Dynamics filed the pending motion to compel further document production from Xerox. (Docket # 102). A few days later, on October 19, 2020, Xerox filed three petitions for *ex parte* reexamination of the '772 patent with the United States Patent Trade Office ("PTO").[2] (Docket # 129-1 at ¶ 4). Xerox proffers that it waited to file the petitions for reexamination until after Document Dynamics formalized its claim construction positions so that Xerox could assess the effect of those positions on their reexamination arguments. (*Id.* at ¶ 5).

In the reexamination petitions, Xerox contended that a substantial new question of patentability was raised by several prior art references, including the "Sabbagh," "Davidson," "Coons," "Caffary," and "Reddy" references. (Docket ## 123-1 at 5; 123-2 at 5). As evidenced by the inclusion of three of the references – Caffary, Sabbagh, and Coons – in Xerox's invalidity

---

[2] Although this litigation only involves claim 4 of the '772 patent, the reexamination proceedings concern the "patentability of all of the ['772] patent's claims (*i.e.*, 1-6)." (Docket # 126-1 at 5).

3

contentions (Docket # 128-1 at 2 at ¶ 7), Xerox has been aware of them since at least December 2018. The remaining two references – Reddy and Davidson – were discovered by Xerox during its February 2020 prior art search. (Docket # 129-1 at ¶ 4). On December 10, 2020, the PTO notified Xerox that it had granted Xerox's requests for *ex parte* reexamination.[3] (Docket ## 123-1 at 4; 123-2 at 4). On January 15, 2021, Xerox filed this motion to stay pending the outcome of the reexamination proceedings. (Docket # 126).

Xerox argues that a stay is warranted because the results of the reexamination will simplify the issues to be litigated in this matter: if the patent claim is cancelled, the issues will be eliminated; if the claim is amended, issues will be narrowed and the risk of relitigating issues minimized; and, if the claim is confirmed, the PTO's expert analysis will be available to the parties and the Court. (Docket ## 126-1 at 9-12; 129 at 5-7). Xerox also maintains that a stay is appropriate because the litigation is in its early stages, Document Dynamics would suffer no prejudice, and the litigation burden on the parties and the Court would be lessened by a stay. (Docket # 126-1 at 12-20).

Document Dynamics opposes the stay on the grounds that the request is merely another step in an ongoing attempt by Xerox to delay this litigation. (Docket # 128 at 9-12). According to Document Dynamics, Xerox's request is untimely, having been made only after the parties engaged in document discovery, prepared invalidity contentions, and submitted claim construction briefs. (*Id.* at 13-17). Further, Document Dynamics contends that a stay would not likely simplify the issues because cancellation or invalidation of the patent as a result of reexamination is improbable. (*Id.* at 12-13).

---

[3] Document Dynamics had a two-month period from the date of the reexamination order within which to provide a statement on the reexamination. (Docket ## 123-1 at 4; 123-2 at 4). According to Xerox, Document Dynamics did not file a statement. (Docket # 129 at 8).

B. **<u>Discussion</u>**

The procedure for patent reexamination is set forth by statute in Title 35 of the United States Code. In pertinent part, the statute provides:

> Any person at any time may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any prior art cited under the provisions of section 301. The request must be in writing . . . [and] set forth the pertinency and manner of applying cited prior art for every claim for which reexamination is requested. Unless the requesting person is the owner of the patent, the Director promptly will send a copy of the request to the owner of record of the patent.

35 U.S.C. § 302. "Reexamination may result in (1) a confirmation of the claims in whole; (2) a confirmation of the claims in amended form; or (3) cancellation of the claims." *Lederer v. Avotec, Inc.*, 2017 WL 11113809, *2 (E.D.N.Y. 2017) (internal quotations omitted). In the event that "a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013), *cert. denied*, 572 U.S. 1115 (2014).

"One purpose of the reexamination procedure is to eliminate the issue of patent claim validity (when the claim is cancelled by the [PTO]), or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Steuben Foods, Inc. v. GEA Process Eng'g, Inc.*, 2013 WL 5567499, *3 (W.D.N.Y. 2013) (quoting *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir.), *cert. denied*, 464 U.S. 935 (1983)). "The procedure was intended 'to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts . . . ,' especially where the infringement litigation is in the early stages." *Bausch & Lomb Inc. v. Rexall Sundown, Inc.*, 554 F. Supp. 2d 386, 389 (W.D.N.Y. 2008) (quoting *Snyder Seed Corp. v. Scrypton Sys., Inc.*, 1999 WL 605701, *2

5

(W.D.N.Y. 1999)). "Resort to the reexamination procedure should not be sanctioned through the issuance of a stay, however, where it is pursued for tactical advantage after substantial and costly discovery has been conducted or where trial is imminent." *Id*.

Although the commencement of reexamination proceedings does not operate as an automatic stay of federal court litigation involving identical claims, a district court retains the authority, pursuant to its inherent power to control and manage its docket, to stay an action pending the outcome of reexamination proceedings before the PTO. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988); *TouchTunes Music Corp. v. Rowe Int'l Corp.*, 676 F. Supp. 2d 169, 176 (S.D.N.Y. 2009); *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999), *appeal dismissed*, 243 F.3d 554 (Fed. Cir. 2000). "A motion to stay an action pending the resolution of a related matter in the [PTO] is directed to the sound discretion of the court." *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d at 406 (quoting *Braintree Labs., Inc. v. Nephro-Tech., Inc.*, 1997 WL 94237 (D. Kan. 1997)). Neither party in this matter disputes the Court's authority to order a stay; rather, they dispute whether the Court should exercise it.

As various judges have observed, courts "routinely" issue stays pending the outcome of reexamination proceedings, particularly in cases where the litigants have not made substantial progress towards trial. *Middleton, Inc. v. Minnesota Mining and Mfg. Co.*, 2004 WL 1968669, *3 (S.D. Iowa 2004); *Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 WL 1134471, *2 (S.D.N.Y. 2000) (collecting cases); *see also Card Tech. Corp. v. DataCard Corp.*, 2007 WL 551615, *4 (D. Minn. 2007) ("a stay is usually warranted unless other factors outweigh the potential benefits of awaiting the outcome of reexamination"); *Bausch & Lomb Inc. v. Alcon Labs., Inc.*, 914 F. Supp. 951, 953 (W.D.N.Y. 1996) ("[b]ecause[] the PTO is considered to have expertise in deciding issues of patentability[,] many courts have preferred to postpone making

final decisions on infringement until the PTO rules on issues before it"). However, "[t]here is no *per se* rule that patent cases should be stayed pending [reexamination] because such a rule would invite parties to unilaterally derail litigation." *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2007 WL 1655625, *3 (N.D. Cal. 2007) (citations and internal quotation marks omitted).

Courts generally consider three factors in deciding a motion to stay pending review by the PTO: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) how far the litigation has already progressed." *Lederer v. Avotec, Inc.*, 2017 WL 11113809 at *3 (quotations omitted). "These factors are not exclusive, however, and in the end, an overarching consideration of the circumstances in their totality governs." *Rensselaer Polytechnic Inst. v. Apple, Inc.*, 2014 WL 201965, *3 (N.D.N.Y. 2014).

I turn first to the question whether a stay of the proceedings threatens undue prejudice or tactical disadvantage to Document Dynamics or offers an unfair tactical advantage to Xerox. "Consideration of tactical disadvantage arises from the concern that the request for reexamination is being used as a tactical tool in litigation." *Am. GNC Corp. v. LG Elecs. Inc.*, 2018 WL 1250876, *4 (S.D. Cal. 2018) (internal quotations omitted). "The question of undue prejudice or clear tactical advantage is informed by four sub-factors, including (1) the timing of the review request; (2) the timing of the request for stay; (3) the status of the review proceedings; and (4) the relationship of the parties." *Rensselaer Polytechnic Inst. v. Apple Inc.*, 2014 WL 201965 at *4 (quotations omitted).

In this case, the parties are not competitors in the market place, the reexamination petitions have been granted by the PTO, and Xerox moved for a stay approximately one month

7

after receiving notice that its petitions were granted – all factors which weigh in favor of granting a stay in this matter. *See Lederer*, 2017 WL 11113809 at *6 ("[t]he fact that the USPTO has already granted [defendant's] petition for reexamination weighs in favor of granting its motion to stay"); *Princeton Dig. Image Corp. v. Konami Dig. Entm't Inc.*, 2014 WL 3819458, *6 (D. Del. 2014) ("[c]ourts have recognized that when the parties are direct competitors, there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement . . . , including the potential for loss of market share and an erosion of goodwill"). In my estimation, however, careful review of the manner in which Xerox has litigated this case weighs against the requested stay.

"In evaluating prejudice, courts have found that when requests for reexamination are made well after the onset of litigation, coupled with a subsequent request to stay, there is an inference that the moving party is seeking an inappropriate tactical advantage." *ThermoLife Int'l, LLC v. Hi-Tech Pharm., Inc.*, 2019 WL 5597311, *3 (N.D. Ga.), *report and recommendation adopted by*, 2019 WL 5550001 (N.D. Ga. 2019); *see also Cronos Techs., LLC v. Expedia, Inc.*, 2016 WL 1089752, *2 (D. Del. 2016) ("[d]efendants' delay in requesting *ex parte* reexamination results in a situation in which a stay would be unduly prejudicial to [p]laintiff and would present [p]laintiff a clear tactical disadvantage"); *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 2012 WL 12895765, *4 (D. Minn. 2012) ("courts have denied motions to stay when there is an inexplicable or unjustified delay in seeking re-examination or when it appears that a stay will serve simply to delay proceedings") (quotations omitted); *Ultra Prods., Inc. v. Antec, Inc.*, 2010 WL 1688538, *3 (N.D. Cal. 2010) ("[defendant's] election not to seek reexamination at any point in the past several years . . . raises the inference that the timing of the current request is tactically driven"); *Delta v. Frangible Ammunition, LLC v.*

*Sinterfire, Inc.*, 2008 WL 4540394, *1 (W.D. Pa. 2008) ("[d]efendant's delay of approximately [twenty-two] months since the filing of this lawsuit to request reexamination further amplifies the [c]ourt's concerns"). In this case, Xerox filed two dispositive motions after the complaint was served, the second only one week after its motion to dismiss was denied. While those motions were pending, Xerox conducted a prior art search, identified three of the five prior art references upon which the reexamination petitions rely, and served its preliminary invalidity contentions. Despite its knowledge of the prior art and Document Dynamics's infringement positions, Xerox did not seek reexamination of the patent from the PTO. Rather, after the district court summarily denied its motion for summary judgment, Xerox hired new counsel, conducted another prior art search, and moved to transfer the case to this venue (a motion that easily could have been filed much earlier in the litigation). With respect to discovery, despite Xerox's accusation that Document Dynamics delayed the process (Docket # 126-1 at 13), it was Document Dynamics which moved to compel production of discovery from Xerox. (*See* Docket ## 33, 102).

Xerox attributes its delay in seeking reexamination to its retention of new counsel in October 2019 and its discovery in February 2020 of additional prior art references relevant to the reexamination analysis. Xerox has offered no explanation, however, why the earlier prior art search did not uncover the references discovered in February 2020; the fact that Xerox later retained new counsel with a different litigation strategy does not insulate Xerox from the consequences of its prior counsel's undertakings, like their prior art searches, whether or not they were thorough or successful. See *ThermoLife Int'l, LLC v. Hi-Tech Pharms., Inc.*, 2019 WL 5597311 at *3 (denying stay where moving party was aware of "all but one of the prior art references that form the basis of the reexamination requests" but delayed seeking reexamination;

"[p]laintiff . . . has initiated the reexaminations and requested the stay well after the onset of litigation, and thus [p]laintiff would obtain an unfair tactical advantage from a stay at this point in the litigation"); *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 2014 WL 580891, *2 (W.D. Wis. 2014) ("[w]hile [defendant's] new position may have resulted not from bad faith, but instead from a change in counsel and a corresponding shift in litigation strategy, it certainly prejudices [plaintiff] to allow [defendant] to circumvent the scope of the remand . . . simply because [defendant] has now identified what it apparently believes is stronger prior art[;] . . . [defendant] must live with the consequences of its litigation choices"), *aff'd*, 628 F. App'x 767 (Fed. Cir. 2016) (per curiam); *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 2012 WL 12895765 at *4 (denying stay where no reasonable explanation was given for failure to identify prior art references during earlier search); *Cynosure, Inc. v. Cooltouch Inc.*, 2009 WL 2462565, *3 (D. Mass. 2009) ("[p]articularly troubling is the fact that defendant waited so long to seek reexamination and a stay notwithstanding the duration of its awareness of the prior art references on which the reexamination is based[;] . . . [s]uch delay suggests that it is using the reexamination process as a mere dilatory tactic") (quotations omitted).

        Moreover, other than its strategic decision to await the filing of the parties' Joint Claim Construction and Prehearing Statement (Docket # 100), Xerox has offered no justification for the eight-month delay between the time Xerox identified the two additional prior art references in February 2020 and the filing of its petitions for *ex parte* reexamination in October 2020. Courts often deny motions to stay where the moving party knew of the prior art but delayed in filing its request for reexamination. *See ThermoLife Int'l, LLC*, 2019 WL 5597311 at *4 (collecting cases demonstrating that delays of three to eight months after discovering prior art warrant denials of stay applications).

Rather than promptly seeking reexamination – or even alerting the Court and opposing counsel of its intent to do so – Xerox remained silent on the issue and permitted the litigation to proceed, including arguing the transfer motion, filing the parties' construction positions, and engaging in discovery and related motions, thereby further expending the resources of both the court and its opponent. *Cf. Bausch & Lomb Inc. v. Rexall Sundown, Inc.*, 554 F. Supp. 2d at 390 ("[a]lthough it would have been preferable had [defendant] promptly notified the [c]ourt and opposing counsel of its intention to seek reexamination at the time it discovered the prior art, the several-month delay in filing its motion did not result in significant discovery expenses or substantial movement towards trial"). Only after Xerox was served with another motion to compel – one which, according to Xerox, had the potential to require production of "expensive and burdensome" discovery (Docket # 106 at 17) – did Xerox file the reexamination requests. Given Xerox's lengthy and largely unexplained delay in seeking reexamination, I find that this factor, whether measured from the inception of the litigation or from Xerox's later discovery of new references, weighs strongly in favor of denial of the stay. *See Xilinx, Inc. v. Invention Inv. Fund I LP*, 2012 WL 6003311, *3 (N.D. Cal. 2012) (denying stay where defendant requested stay only after significant case events, including denial of stay in related case, denial of motion to dismiss, and receipt of invalidity contentions providing insight into opposing parties' theories; "[o]ver a year into this litigation, [d]efendants have made this request only after the occurrence of [these] three events[;] . . . [i]n light of these developments . . . , there appears no other reasonable explanation for the delay in seeking this relief"); *Xerox Corp.*, 69 F. Supp. 2d at 408 ("[d]efendants were aware of the alleged prior art they cited to PTO in the request for reexamination as early as March of 1998, yet chose to continue litigation in this

[c]ourt, waiting until October of 1998 (after an adverse decision in their motion for summary judgment) to petition PTO for reexamination").

I find that the second consideration – whether a stay will simplify the issues in question and trial of the case – weighs in favor of the requested stay. This case involves a single claim (claim 4) of a single patent (the '772); regardless of the outcome of the reexamination, the stay likely will conserve the resources of the Court and the litigants and simplify the issues before the Court. *See Lederer*, 2017 WL 11113809 at *11 (a stay "is particularly apt in light of the fact that [plaintiff's] complaint alleges a single claim of patent infringement and that all claims of the [accused patent] are being reexamined"). Should the PTO determine that the patent is invalid or that claim four is cancelled, the pending litigation will be moot. *See id.* at *10. Conversely, should the PTO reaffirm the patent claims, the Court will benefit from its expert analysis of those claims and the prior art, particularly where, as here, the Court has yet to issue a claim construction order. *See Klaustech, Inc. v. AdMob, Inc.*, 2011 WL 13152861, *3 (N.D. Cal. 2011) ("regardless of whether [defendant] reasserts the same prior art in litigation, after reexamination, this [c]ourt will have a richer prosecution history upon which to base necessary claim construction determinations or reconsideration, and any review of prior art that the [c]ourt may conduct will be enhanced by the PTO's expert opinion") (internal quotations omitted); *Bausch & Lomb Inc.*, 554 F. Supp. 2d at 391; *Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 WL 1134471 at *3; *Snyder Seed Corp. v. Scrypton Sys., Inc.*, 1999 WL 605701 at *2.

The third factor – how far the case has progressed – presents a closer question. "[T]ypical bas[e]s for denying a stay of a litigation [are] that the case has progressed through the bulk of pretrial proceedings . . . or . . . the parties and the [c]ourt have expended substantial resources." *Am. GNC Corp. v. LG Elecs. Inc.*, 2018 WL1250876 at *2. On the one hand, this

12

case has been pending for over three years, several motions have been litigated and decided, and, with the exception of documents that are the subject of the pending motion to compel, document discovery is complete. *See ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, 2013 WL 663535, *3 (D. Del.) (denying stay; "substantial time and resources have been devoted in this case to scheduling and the resolution of discovery disputes, and thus the economies that might otherwise flow from granting a stay early in a case are somewhat offset by the substantial resources already incurred by both the parties and the [c]ourt") (quotations omitted), *report and recommendation adopted by*, 2013 WL 1743854 (D. Del. 2013); *Aviva Sports, Inc.*, 2012 WL 12895765 at *5 (denying stay; "[t]he parties have engaged in extremely extensive discovery on the false advertising claims, and have exchanged claim charts, prior art statements, exchanged claim terms and identified extrinsic evidence[;] . . . under no circumstances can the patent side of this case be described as 'in its infancy'"). On the other hand, fact depositions and expert discovery have yet to take place, and, although the parties have filed their claim construction briefs, a *Markman* hearing has yet to be scheduled. In other words, although the parties and the Court already have devoted substantial resources to this litigation, a "significant amount of work still remains such as expert discovery, summary judgment motions and trial." *Am. GNC Corp.*, 2018 WL1250876 at *2 (internal quotations omitted); *see Longitude Licensing Ltd. v. Apple Inc.*, 2015 WL 12778777, *4 (N.D. Cal. 2015) ("[a]lthough the parties' litigation progress to date is not insignificant, there remains much more work to be done[;] . . . no summary judgment or trial date has been set, and fact discovery is ongoing and expert discovery is just beginning"); *Destination Maternity Corp. v. Target Corp.*, 12 F. Supp. 3d 762, 770 (E.D. Pa. 2014) ("[c]ourts often find the stage of the litigation weighs in favor of a stay if there remains a significant amount of work ahead for the parties and the court, even when the parties and/or the court have

already devoted substantial resources to the litigation"); *Princeton Dig. Image Corp. v. Konami Dig. Entm't Inc.*, 2014 WL 3819458 at *4 (stay warranted where "most of the significant case events are well in the future in these actions – further *Markman* hearings, the completion of expert discovery and the filing of case dispositive motion are all still many months . . . away"). On balance I find that this factor, if it can be said to favor one position over the other, weighs slightly in favor of a stay. *See Xilinx, Inc. v. Invention Inv. Fund I LP*, 2012 WL 6003311 at *4 (denying stay; "[t]here is some history here, including initial motion practice, the exchange of preliminary contentions and completion [of] claim construction discovery[;] . . . [t]hus, the parties have invested some significant effort into this litigation").

In sum, two of the three factors favor granting a stay in the interest of preserving judicial resources and reducing the costs of litigation, while one weighs significantly against a stay. Although little doubt exists that the easiest course for the Court would be to stay the action in its entirety, such an outcome "would reward [Xerox's] unexplained, and seemingly unexplainable, delay in filing the reexamination request." *Lectrolarm Custom Servs., Inc. v. Vicon Indus., Inc.*, 2005 WL 2175436, *5 (W.D. Tenn. 2005). Under these circumstances, and considering the current procedural posture of the litigation, I conclude that the parties should be required to complete fact discovery while the reexamination proceedings are pending.[4] All other litigation activity in this case will be stayed until further order of the Court. In order to monitor the progress of the reexamination proceedings, the Court directs the parties to submit written status reports every six months commencing on December 1, 2021. *See Whatley v. Nike Inc.*, 2000 WL 370529, *3 (D. Or. 2000) ("[t]he court clearly has the discretion to do any of the

---

[4] The Court is mindful that the current scheduling order sets a deadline for completion of fact discovery after the Court's claim construction ruling in order to permit the parties to conduct additional fact discovery, if any, responsive to or prompted by the ruling. Through this Order, the Court directs the parties to conduct and complete all fact discovery that may reasonably be anticipated prior to the Court's claim construction ruling.

following: (1) grant a complete stay of all matters . . . ; (2) grant a partial stay of these proceedings (*e.g.* stay the motions but allow discovery to proceed); (3) grant a partial stay of all or part of these proceedings pending the PTO's initial review, but not any appeal; and (4) deny the motion to stay in its entirety"); *see also In re Laughlin Prods., Inc.*, 265 F. Supp. 2d 525, 538 (E.D. Pa. 2003) (granting partial stay pending reexamination but permitting limited discovery to proceed).

## II. Motion to Compel

In view of this Court's determination that fact discovery should proceed, the Court will address the portion of the motion to compel filed by Document Dynamics that remains pending. (Docket # 102). The Court resolved the majority of the issues raised by the motion by Order dated December 2, 2020, but reserved on one issue relating to the scope of discovery pertaining to accused products. (Docket # 112). As to that issue, the Court ordered supplemental submissions, which were filed on December 15, 2020. (Docket ## 112, 119, 121).

Document Dynamics maintains that the proper scope of discovery should include Xerox's Remote Proxy Apps, all of which Document Dynamics accused of infringing the '772 patent. (Docket # 102-1 at 16). The Remote Proxy Apps include the following products: Xerox Print Agent ("XPA"), CentreWare Web ("CWW"), Xerox Device Agent ("XDA"), XDA Lite, and Xerox Device Manager ("XDM") (collectively, the "Remote Proxy Apps").[5] (*Id.*).

By contrast, Xerox contends that the proper scope of discovery should be limited to the Remote Proxy Apps that potentially infringe claim 4 of the '772 patent, which Xerox

---

[5] Other submissions suggested that the dispute over the scope of the accused products includes additional products such as XDA Partner Edition ("XDA PE") and Xerox Service Manager ("XSM"). (Docket ## 106 at 13; 106-1 at Ex. A at ¶ 6; 121 at 11; 121-3 at ¶ 3). Document Dynamics's latest submission, however, only addresses XPA, XDM, XDA, XDA Lite, and CWW. (Docket # 119 at 1). Accordingly, those products are addressed herein.

identifies as XPA and XDM.  (Docket # 121 at 6, 10-13).  Despite this position, Xerox has produced source code and all technical documents for each of its Remote Proxy Apps, as well as financial information relating to XPA and XDM.  (*Id.*).  Xerox resists producing financial information relating to the remaining three Remote Proxy Apps on the grounds that the information is not relevant to the action.[6]  (*Id.*).  Further, Xerox argues that responsive documents reflecting revenue or other financial information relating to these products do not exist but would have to be created at significant burden to Xerox.  (*Id.*).

Although the parties have submitted technical documents and affidavits in an effort to persuade this Court as to which Remote Proxy Apps are relevant (Docket ## 119, 121), the crux of their dispute is no different from the dispute that lies at the core of the competing infringement/invalidity contentions and claim constructions.  On the one hand, Xerox contends that, irrespective of whether its Remote Proxy Apps manage, track, monitor, or capture print-related data,[7] only those software products that perform this function by appending software to an existing print driver on a print server arguably infringe claim 4 of the '772 patent.[8] (Docket # 121 at 4-15 ("[s]imply showing that an application '"manages, monitors, and reports" print transaction events,' or is 'installed locally on a print server to monitor and track print transaction events,' or 'discovers and monitors network printing devices,' or 'collects and

---

[6] Although the initial motion sought production of working copies of each of the Remote Proxy Apps, the Court did not reserve on that issue and, accordingly, the issue is not presently before the Court.  (*Compare* Docket # 112 at 2 *with* Docket # 121 at 5).  Rather, the Court directed the parties to confer on this issue and to present the matter to the Court – either formally or informally – in the event they were unable to resolve it.  (Docket # 112 at 2).

[7] The parties dispute the meaning of many of the terms in claim 4, as well as whether Xerox's products meet each of its elements.  The main disagreement underlying this particular discovery dispute is whether the Remote Proxy Apps gather print-related information by appending software to a print driver on a print server.  The parties also appear to dispute, *inter alia*, the construction of the terms "user," "device," "document," and "metrics." (Docket ## 100 at 3; 100-1 at 6-9).

[8] This non-infringement argument appears to differ from the arguments advanced by Xerox in its original submission, which focused on whether the products monitored and tracked printer transaction events using printer agent software.  (Docket # 106 at 8-13).

manages the [print transaction] data' . . . without showing that it does so by appending software to print drivers on printer servers is wholly insufficient")). Document Dynamics counters that, irrespective of whether the software is appended to a print driver on a print server, any Remote Proxy App that manages, monitors, or tracks print-related data potentially infringes claim 4 of the '772 patent. (Docket # 119 at 4-5). With respect to Xerox's contention that the software must append to an existing print driver on a print server, Document Dynamics maintains that this element is met either literally or under the doctrine of equivalents, reasoning that whether the software is deployed on a print server or other network connected device is immaterial because the software will necessarily work in conjunction with a print driver in order to monitor print data.[9] (Docket ## 119 at 5; 119-3 at 14).

        In my view, resolution of this dispute in the context of a motion to compel would be premature and inappropriate. Stated another way, if I were to limit discovery to only two Remote Proxy Apps (as Xerox urges), that determination would necessarily rest on a judgment that the remaining Remote Proxy Apps (XDA, XDA Lite, and CWW) – products specifically identified in Document Dynamics's infringement contentions – are incapable of infringing the patent at issue. That question is a potentially dispositive determination that is not appropriate for this Court.

        As a final matter, I address the question of burdensomeness. Xerox maintains that documents providing the financial information for its Remote Proxy Apps that Document Dynamics has requested do not exist and would have to be created for each Remote Proxy App. (Docket ## 106 at 17-20; 121 at 5). To do so, Xerox maintains, would impose a substantial and

---

[9] This same element of claim 4 is the subject of dispute in the parties' claim construction submissions. For example, with respect to this element, the parties dispute the terms "print server," "print driver," and "appending printer management agent software to the existing [print driver]." (Docket ## 100 at 2; 100-1 at 3-4).

undue burden. By way of example, Xerox proffers that for XPA (for which it provided financial information in a spreadsheet produced to Document Dynamics), it enlisted three different employees who expended approximately 100 hours total to compile the relevant information and generate the spreadsheet for production. (Docket # 106-1 at Ex. A ¶ 10). In view of the disputed relevancy of these products, and the substantial burden that would be imposed to produce the requested financial information, Xerox urges the Court to deny Document Dynamics's request to compel production of additional financial information. (Docket # 121).

Xerox has already provided this information for two of the five Remote Proxy Apps at issue. Moreover, Document Dynamics seeks this information primarily to demonstrate infringement damages – evidence that it will be required to prove only in the event that it can establish liability.[10] (Docket # 102-1 at 21). Finally, as noted above, the parties principally dispute the construction of several key terms in claim 4 of the '772 patent, disputes which will be resolved only after the district court issues a construction ruling. Under these circumstances, it is reasonable and proportional to the needs of the case to defer Document Dynamics's request for further financial information until after the district court's claim construction ruling.[11] Following the lifting of the stay and the court's claim construction ruling, Document Dynamics may renew its motion if justified by the district court's construction of the claim terms.

---

[10] In its written submissions, Document Dynamics did not argue that the information was relevant to liability. During oral argument, the Court inquired whether the financial information was primarily relevant to the question of damages. (Docket # 117 at 38). In response, counsel for Document Dynamics represented that the information was also potentially relevant in response to an obviousness challenge. (*Id.* at 38-40).

[11] Of course, whether the information must be produced is entirely separate from whether the information must be preserved. Because the motion is denied without prejudice, Xerox is directed to preserve any responsive information in its possession, custody, or control.

## CONCLUSION

For the reasons stated above, Xerox's motion for a stay **(Docket # 126)** is **GRANTED in part and DENIED in part**. Specifically, the motion for a stay is granted except as to fact discovery. The parties are directed to provide the Court with a written report on the status of the reexamination proceedings every six months beginning on December 1, 2021. Further, for the reasons stated above, Document Dynamics's motion to compel production of additional financial information **(Docket # 102)** is **DENIED without prejudice** to renewal after the district court issues its claim construction ruling.

**IT IS SO ORDERED.**

                                            *s/Marian W. Payson*
                                         MARIAN W. PAYSON
                                    United States Magistrate Judge

Dated: Rochester, New York
         May 20, 2021